UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| THE BELT RAILWAY COMPANY ) | |
| OF CHICAGO ) | |
| ) | |
| and ) | |
| ) | |
| THE UNION PACIFIC RAILROAD COMPANY, ) | |
| ) | |
| Plaintiffs-Counterclaim Defendants, ) | |
| ) | |
| v. ) | No. 11-CV-4710 |
| ) | |
| UNITED TRANSPORTATION UNION ) | |
| ) | |
| Defendant-Counterclaimant. ) | |

**MEMORANDUM OPINION AND ORDER**

MARVIN E. ASPEN, District Judge:

This case follows an arbitration award issued by Public Law Board No. 7304 ("Board" or "PLB 7304"). Plaintiffs, The Belt Railway Company of Chicago ("Belt Railway") and Union Pacific Railroad Company ("Union Pacific," collectively "Plaintiffs") argue that the award should be vacated pursuant to Section 3 First (q) of the Railway Labor Act ("RLA"), 45 U.S.C. § 153 First (q). Belt Railway and Union Pacific submit that, despite the narrowness of judicial review of an arbitration award, there are two separate reasons for us to vacate this award: (1) by binding Union Pacific and not providing it with notice, the Board acted beyond its jurisdiction, and (2) by failing to provide Union Pacific with notice the Board also violated the RLA. Defendant United Transportation Union ("UTU") conversely argues that the award should be

enforced under Section 3 First (p) of the RLA, 45 U.S.C. § 153 First (p). Both parties have filed motions for summary judgment.

After setting forth a brief history of this dispute, we address first whether the Board exceeded its jurisdiction when deciding the merits, and second whether the Board's failure to provide notice to Union Pacific is sufficient reason to vacate the Award. We answer both in the negative and grant summary judgment to UTU.

## BACKGROUND

Union Pacific is a carrier by rail and operates a rail transportation system. (Pl. Statement of Material Facts ("SOF") ¶ 2.) Belt Railway is a carrier of rail that conducts interchange of rail traffic among other railroads in and around the Chicago area; its customers include all of the large U.S. freight railroads, including Union Pacific. Belt Railway is also owned by six major rail carriers, including Union Pacific. (*Id.* ¶ 1.) Belt Railway trainmen crew the trains on the Belt Railway networks, and Defendant UTU represents trainmen employed by Belt Railway. (Pl. SOF ¶¶ 3–4.)

The PLB Award in question stems from the Board's interpretation of a Memorandum of Understanding ("MOU") between Belt Railway, UTU, and a second union that represents Belt Railway locomotive engineers, the Brotherhood of Locomotive Engineers ("BLE"). The contract reads in its entirety:

> This will confirm our understanding and Agreement with respect to the proposed Reciprocal Interchange of cars between The Belt Railway Company of Chicago at Clearing Yard and the Chicago and North Western at Proviso Yard.
>
> It is agreed that the Belt crews will deliver and pull interchange traffic to Proviso Yard for a period of three (3) months commencing April 1, 1990. The Chicago and North Western crews will pull and deliver interchange traffic to clearing Yard commencing July 1, 1990.

>It is understood that the reciprocal interchange will rotate every three (3) months between the named railroad properties.
>
>This Agreement signed at Chicago, Illinois this 26th day of March, 1990.

(Record of Proceedings, Ex. 2-C (MOU).) The Agreement was subsequently amended to allow for a four month, rather than three month, rotation. The contract was signed by representatives from Belt Railway, BLE, and UTU. Chicago and North Western Railroad ("CNW") was not a signatory to the contract. (Pl. SOF ¶¶ 7–10.) In 1995, Union Pacific acquired 100% of CNW; Union Pacific never became a signatory to the contract. (Def. SOF ¶ 7.)

In 2006, Union Pacific conducted a financial analysis of the reciprocal arrangement and concluded that Union Pacific could do the interchange work with its own crews at a lower cost. Thus, Union Pacific stopped requesting puller services from Belt Railway and began exclusively using its own employees to perform the interchange work between Proviso Yard and Clearing Yard. "It is the implementation of this financial analysis action on the part of the [Union Pacific] and its handling of interchange traffic by its own [Union Pacific] crews both to and from the [Belt Railway] that is the crux of the dispute in this case." (Record of Proceedings, Ex. 4 at 2 (Award).)

UTU subsequently filed a claim against Belt Railway alleging that the use of Union Pacific employees to pull Union Pacific trains to Proviso Yard violated the MOU. (Pl. SOF ¶ 16.) After processing the claim in accordance with the relevant procedures, UTU and Belt Railway agreed to establish a Public Law Board to hear the dispute. (Pl. SOF 17.)

In front of the Board, UTU alleged that "the Carrier [Belt Railway] unilaterally abolished [a] train assignment that was operated daily by [Belt Railway] crews . . . the Carrier allowed this train to be operated by a [Union Pacific] crew in violation of the agreement . . . and claimant was

3

denied the right to work." (Record of Proceedings, Ex. 4 at 2–3 (PLB Award).) In support of this claim, UTU argued that the purpose of the MOU was to provide for an interchange/transfer service to be mutually shared by crews of Belt Railway and CNW/UP. Further, it argued "the fact that [Union Pacific] is not a party to the MOU does not give [it] authority to dictate who will provide interchange/transfer service originating on [Belt Railway] property; and, the MOU can only be modified or amended under the recognized procedures of the [RLA]." (*Id*. at 3–4.)

Plaintiffs, however, describe the contract as one between Belt Railway and its employees, giving those employees the right to perform certain work upon receipt of a request for service from one of Belt Railway's customers, CNW/UP. In other words, they argued, "the MOU was predicated upon the former CNW requesting interchange service." (*Id*. at 4.)

After a full hearing, PLB 7304 issued its findings and sustained UTU's claims. Specifically, the Board found:

> Although the CNW never became a signatory of the MOU and the amendment thereto, it must be held that by operative practice over a long period of time CNW became party to the reciprocal system for the interchange of rail car traffic. In this same connection, [Union Pacific], upon acquiring CNW in April 1995, and having continued the circumstances and conditions of the MOU known to it at the time, must be presumed to have also effectively assented to the reciprocal arrangement . . .
>
> In the instant case, the Board is satisfied in the light of the extent of usage that attached to the clear and express terms of the MOU that [Belt Railway], as with [Union Pacific], is bound to the specifications of the MOU. Neither [Belt Railway] nor [Union Pacific] by its own acts has the right to negate the rights of UTU represented [Belt Railway] train service employees as established under the terms of the MOU in the furtherance of a presumed financial purpose. . . .
>
> Further, the Board finds that [Belt Railway], in connection with [Union Pacific], did not have a unilateral right to change the established interpretation and application of the MOU to meet an asserted change in local operating or financial conditions.

(*Id*. at 5 (PLB Award).)  Belt Railway, joined by Union Pacific, timely petitioned this court to vacate the Board's award.

## ANALYSIS

### A. Scope of Judicial Review

The scope of judicial review of a Public Law Board's award is extremely limited; indeed, it has been referred to as "among the narrowest in the law." *See Union Pac. R.R. Co. v. Sheehan*, 439 U.S. 89, 91, 99 S. Ct. 399, 401 (1978); *American Train Dispatchers Ass'n v. Norfolk & W. Ry. Co.*, 937 F.2d 365, 366 (7th Cir. 1991).  The RLA provides:

> The reviewing court may set aside [a Public Law Board] award in whole or in part or remand the matter for further action on the following grounds: (1) failure of the board to comply with the requirements of the Railway Labor Act; (2) failure of the board to confine itself to matters within its jurisdiction; or (3) fraud or corruption by a member of the board making the award.

45 U.S.C. § 153 First (q).  In considering this provision of the RLA, Judge Posner discussed at length the appropriate deference that a district court is to pay the determination of a Public Law Board:

> As we have said too many times to want to repeat again, the question for decision by a federal court asked to set aside an arbitration award . . . is not whether the arbitrator or arbitrators erred in interpreting the contract; it is not whether they clearly erred in interpreting the contract; it is not whether they grossly erred in interpreting the contract; it is whether they interpreted the contract.  If they did, their interpretation is conclusive.  By making a contract with an arbitration clause the parties agree to be bound by the arbitrators' interpretation of the contract.  A party can complain if the arbitrators don't interpret the contract—that is, if they disregard the contract and implement their own notions of what is reasonable or fair. . . . But a party will not be heard to complain merely because the arbitrators' interpretation is a misinterpretation.

*Hill v. Norfolk & W. Ry. Co.*, 814 F.2d 1192, 1195 (7th Cir. 1987).

Because the parties have contracted to have their disputes heard by arbitrators, "it is the arbitrator's view of the facts and of the meaning of the contract that they have agreed to accept." *United Paperworkers Inter. Union v. Misco*, 484 U.S. 29, 37–38, 108 S. Ct. 364, 370 (1987). We will thus not hear claims of factual or legal error, as would an appellate court on review of a lower court's decision. *Id.*, 484 U.S. at 38, 108 S. Ct. at 370.

**B. The Board's Decision on the Merits**

An arbitrator fails to confine himself to matters within his jurisdiction, in violations of the RLA, 45 U.S.C. § 153 First (q), when the award fails to "draw[] its essence from the collective bargaining agreement" or he "dispenses his own brand of industrial justice." *Misco*, 484 U.S. at 36, 108 S. Ct. at 370 (citing *Steelworkers v. Enter. Wheel & Car Corp.*, 363 U.S. 593, 597, 80 S. Ct. 1358, 1361 (1960)); s*ee also W.R. Grace and Co. v. Local Union 759, Int'l Union of United Rubber, Cork*, 461 U.S. 757, 764, 103 S. Ct. 2177, 2182 (1983). Further, an award does not draw its essence from a collective bargaining agreement when the arbitrator ignores the plain language of that agreement. *Misco*, 484 U.S. at 38, 108 S. Ct. at 371 ("The arbitrator may not ignore the plain language of the contract.").

Plaintiffs argue that PLB 7304 did just that—ignored the plain language of the MOU. They first assert that "UTU does not and cannot point to *anything* in the MOU that actually supports the notion that Union Pacific had expressly or implicitly assented to joining a labor agreement between Belt Railway and its unions." (Pl. Resp. at 5 (emphasis in original).) If we were to accept this argument, however, we would be overstepping our authority in reviewing an arbitration award. We will not reject an award on the ground that the Board misread the contract. *See Misco*, 484 U.S. at 38, 108 S. Ct. at 371 (citing *Enter. Wheel*, 363 U.S. at 599, 80

6

S. Ct. at 1362). In fact, "as long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision." *Misco*, 484 U.S. at 38, 108 S. Ct. at 371.

Plaintiffs next argue that the Board ignored the clear and express terms of the MOU. Specifically, they explain that the only parties bound by the contract are Belt Railway, UTU, and BLE—under the plain text of the MOU, CNW/Union Pacific was not a party—yet, the Board found that Union Pacific was bound as well. (Record of Proceedings, Ex. 4 at 5 (Award) ("[Belt Railway], as with [Union Pacific], is bound to the specifications of the MOU.").)

To demonstrate that this outcome is sufficiently outside the Board's jurisdiction such that we could set aside the Award, Plaintiffs cite to various cases where courts found that arbitrators ignored the clear and express terms of a contract. In each case, however, the other panel's overstepping was obvious. *See e.g., Mo. River Serv., Inc. v. Omaha Tribe of Neb.*, 267 F.3d 848, 855 (8th Cir. 2001) (allowing award to be satisfied from proceeds generated under a different agreement when the contract expressly provided that an award could only be satisfied from property or profits under agreement at issue); *Int'l Union v. Marrowbone Dev. Co.*, 232 F.3d 383, 389 (4th Cir. 2000) (failing to conduct an evidentiary hearing when the agreement stated that "the arbitrator shall conduct a hearing . . ." ); *Container Products, Inc. v. United Steelworkers of America*, 873 F.2d 818, 820 (5th Cir. 1989) (imposing reinstatement based on a "school of thought among arbitrators," not on the parties' contract, after finding just cause for dismissal); *Wilson v. Chicago and N. W. Transp. Co.*, 728 F.2d 963, 966 (7th Cir. 1984) (giving company 30 days to investigate when the agreement provided for ten days "clearly alters the terms of the agreement and exceeds the realm of interpretation and application"). Conversely,

7

PLB 7304 did not ignore precise language in the contract. The MOU does not address the specific issue faced by the Board. It neither states that the agreement is contingent on Belt Railway receiving service requests from Union Pacific, nor dictates what should occur in the type of situation that arose. While, on the merits, we might agree with Belt Railway that the contract must be contingent, PLB 7304 did not violate a clear provision in the contract when it rejected this interpretation. Even if we found that the board grossly erred in its interpretation, we would not be justified in overturning the award. *Hill,* 814 F.2d at1195; *see also W.R. Grace and Co.,* 461 U.S. at 764, 103 S. Ct. at 2182 ("Under well established standards for the review of labor arbitration awards, a federal court may not overrule an arbitrator's decision simply because the court believes its own interpretation of the contract would be the better one." (citing *Enter. Wheel.*, 363 U.S. at 596, 80 S. Ct. at 1360))).

Finally, Plaintiffs assert that the Board "effectively drafted its own terms to add Union Pacific as a party to satisfy its sense of industrial justice." (Pl. Mem. at 11.) This, they argue, is modification, not interpretation and thus requires us to vacate the award. (*Id*. at 12.) Plaintiffs specifically argue that it was incorrect to find that a third-party can become a party to a labor agreement through "operative practice." However, because the Board's interpretation is not "wholly baseless and completely without reason," we cannot say that the Board necessarily erred by treating Union Pacific as it did. *See Gunther v. San Diego & Ariz. E. Ry.*, 382 U.S. 257, 261, 86 S. Ct. 368, 371 (1965).

The Board based its findings on "the extent of usage that attached to the clear and express terms of the MOU." (Record of Proceedings, Ex. 4 at 5 (Award).) Arbitration boards have consistently been allowed to consider custom, usage, and practice when devising an award:

8

> The labor arbitrator's source of law is not confined to the express provisions of the contract, as the industrial common law—the practices of the industry and the shop—is equally a part of the collective bargaining agreement although not expressed in it. The labor arbitrator is usually chosen because of the parties' confidence in his knowledge of the common law of the shop and their trust in his personal judgment to bring to bear considerations which are not expressed in the contract as criteria for judgment.

*United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 581–82, 80 S. Ct. 1347, 1352 (1960); *see also Consolidated Rail Corp. v. Ry. Labor Executives' Ass'n*, 491 U.S. 299, 311, 109 S. Ct. 2477, 2485 (1989) ("[I]t is well established that the parties' 'practice, usage and custom' is of significance in interpreting their agreement."). Further, while the Board's decision creates a foreseeable problem for Union Pacific, it does not directly create a legal obligation for it. The possibility that the award will actual bind Union Pacific or that it directly adjudicated Union Pacific's rights is not sufficient for us to overturn the decision. *See Enter. Wheel*, 363 U.S. at 598, 80 S. Ct. at 1361 ("A mere ambiguity in the opinion accompanying an award, which permits the inference that the arbitrator may have exceeded his authority, is not a reason for refusing to enforce the award."). The cases cited by Plaintiffs are easily distinguishable as, in each case, the arbitration panel explicitly decided the rights of non-parties. *See e.g., Nationwide Mut. Ins. Co. v. Home Ins. Co.*, 330 F.3d 843, 847 (6th Cir. 2003) ("[I]t is not legally plausible to interpret the arbitration award [directing payment to a non-party] as creating no legal rights in [the non-party]."); *Int'l Bhd. of Elec. Workers v. O.K. Elec. Co., Inc.*, 793 F.2d 214, 216 (8th Cir. 1986) ("[T]he district court correctly determined that the Council's award is not enforceable against" two companies that did not sign the collective bargaining agreement.); *Orion Shipping & Trading Co., Inc. v. Eastern States Petroleum Corp.*, 312 F.2d 299, 300–01 (2nd Cir. 1963) (noting arbitrator exceeded his powers in determining that a non-party-corporation was liable on

a guarantee if the party-corporation defaulted); *Lumber Liquidators, Inc. v. Sullivan*, 10-cv-11890, 2011 WL 5884252 *3 (D. Mass. Aug. 10, 2011) (invalidating arbitration award that expressly enjoined a non-party). In sum, the PLB 7304 did not exceed its jurisdiction when deciding the merits of the dispute. Therefore, we will not vacate the Award on this ground.

**B. The Board's Failure to Provide Notice**

It is undisputed that the Board did not provide Union Pacific with official notice of the arbitration hearings. According to Plaintiffs, this failure provides us two reasons to vacate the Award: the Board failed to confine itself to matters within its jurisdiction, and the Board failed to comply with the requirements of the RLA. *See* 45 U.S.C. § 153 First (q).

First, an award can be set aside when the board fails to adhere to the plain language of the agreement establishing it and thus fails to confine itself to matters within its jurisdiction. *Misco,* 484 U.S. at 38, 108 S. Ct. at 371; *see also United Trans. Union v. Ne. Ill. Reg'l Commuter R.R. Corp.*, 93 C 2527, 1993 WL 515490, at *4 (N.D. Ill. Dec. 7, 1993) (Aspen, J.) (finding panel's violation of parties' agreement establishing it was reason to vacate award). Here, the arbitration agreement that created PLB 7304 provides in relevant part:

> The determination that a third or additional party may have an interest in a dispute may be made by the Board as constituted with the Neutral Member to consider and dispose of the dispute. Where it is determined that a third or additional party may have an interest in a dispute, such a third or additional party will be given notice of the time and date the dispute will be heard, and an opportunity to appear before the Board on such date and present their case in a manner consistent with the procedures adopted by the Board

(Record of the Proceeding, Ex. 3 ¶ I (Agreement).) Additionally, PLB 7304 found that Union Pacific is bound by the MOU. (Record of the Proceeding, Ex. 4 at 5 (PLB Award) ("[Belt Railway], as with [Union Pacific], is bound to the specifications of the MOU.").) While we do

not decide this issue, this language implies that Union Pacific had an interest in the dispute and should have received notice under the terms of the Agreement.[1]  If true, the Board's failure to provide notice therefore violated the terms of the agreement and provides justification for vacating the Award.

Second, an award can be set aside if the board fails to comply with the RLA.  45 U.S.C. § 153 First (q).  Section 3 First (j) of the RLA further states that the "Board shall give due notice of all hearings to the employee or employees and the carrier or carriers involved in any disputes submitted to them."  45 U.S.C. § 153, First (j).  Plaintiffs argue that the Award involved Union Pacific employees—the employees Union Pacific hired to pull the trains are very likely to be displaced due to the Award.  Because  "in justice and fairness every person who may be adversely affected by an order entered by the Board should be given reasonable notice of the hearing," Union Pacific likely should have been provided notice under the RLA, as well.  *See Hunter v. Atchison, T & S.F. Ry. Co.*, 188 F.2d 294, 300–01 (7th Cir. 1951) ("To say that the train porters are not involved in a dispute which may result in brakeman supplanting them in their jobs is so unrealistic as to be absurd.").  Thus we might be inclined to agree with Plaintiffs that this is another justification for vacating the award,

However, it is not necessary to decide whether notice was required as UTU argues, and we agree that Plaintiffs have waived any objection based on lack of notice to Union Pacific

---

[1] While UTU argues that the notice requirement is optional, the plain language of the Agreement indicates otherwise.  The Board "may" determine if there is a third or additional party; however, after it has made the determination that a "third or additional party may have an interest in the dispute," the Agreement clearly requires that the third party "will be given notice." (Record of Proceedings, Ex. 3 ¶ I (Agreement).)

11

because they failed to present it to the Board.[2] "Failure to present an issue before an arbitrator waives the issue in an enforcement proceeding." *Nat'l Wrecking Co. v. Int'l Bhd. of Teamsters, Local 731*, 990 F.2d 957, 960 (7th Cir. 1993) (citing *UFCW v. John Hofmeister*, 950 F.2d 1340, 1343–44 (7th Cir. 1991); *Auto. Mech. Local 701 v. Joe Mitchell Buick*, 930 F.2d 576, 578 (7th Cir. 1991)); s*ee also Chicago Newspaper Guild v. Field Enter., Inc.*, 747 F.2d 1153, 1157 (7th Cir. 1984) ("The long-established federal policy of settling labor disputes by arbitration would be seriously undermined if parties kept available information from the arbitrator and then attempted to use the information as a defense to compliance with an adverse award.").

Despite Plaintiffs' insistence, there was ample opportunity for Belt Railway to object to the Board's failure to notify Union Pacific.[3] Once PLB 7304 was created, there were two possible outcomes: Belt Railway wins and the Board finds that UTU's claim lacks merit, or Belt Railway loses and the Board finds that Belt Railway is bound by the MOU despite Union Pacific's unilateral actions. As Belt Railway clearly explained in its submission to the panel, "The relief which [UTU] is requesting would literally force [Union Pacific] to utilize [Belt

---

[2] Plaintiffs, in a footnote, raise the possibility that due process provides an additional ground upon which the award should be overturned. They, however, neither elaborate on this claim, nor suggest why this claim, unlike their other failure to notice claims, has not been waived. Therefore, we assume that this claim is waived, as well. Furthermore, in UTU's response, also in a footnote, UTU points out the complicated nature of this claim. *See Union Pacific R. Co. v. Brotherhood of Locomotive Engineers and Trainmen General*,__ U.S. __, 130 S. Ct. 584, 596 n.7 (2009) (refusing to decide the issue, but noting that it would be very uncommon to find a case where the board's action did not provide a § 153 First (q) ground for vacating but was nonetheless incompatibility with due process). This supports our decision that Plaintiffs' brief reference to due process is not sufficient to grant summary judgment in their favor.

[3] The parties do not distinguish between Belt Railway and Union Pacific in the case. Therefore, we do not address any concerns that Union Pacific, assuming it did not have knowledge of the suit, would not have waived this objection.

Railway] crews to pull trains to Proviso Yard in spite of the fact that [Union Pacific], as an independent corporate entity, has decided it can do the work at a lower rate on its own terms." (Record of the Proceedings, Ex. 1 at 7 (Submission of Belt Railway).) In other words, Belt Railway was aware that if it lost in arbitration Union Pacific would be adversely affected. This is in direct contradiction to Plaintiffs' current claim that "Belt Railway cold not have anticipated that the Board would decide the matter in a way that would implicate the rights of a third-party customer." (Pl. Reply at 7.) Just as it is too late for Plaintiffs to argue that it was not until after the Award that "either carrier could have reasonably anticipated a need to claim a right for Union Pacific to participate," (*id.*), it is too late to raise an objection to the Board's failure to provide notice. Therefore, any objection to Union Pacific's lack of notice is waived.

## CONCLUSION

For the foregoing reasons, the Award of PLB 7304 must be enforced. We grant Defendant-Counterclaimant's motion for summary judgment and deny Plaintiffs-Counterclaim Defendant's motion for summary judgment. It is so ordered.

                                                  Marvin E. Aspen
                                                  United States District Judge

Dated: Chicago, Illinois
           April 3, 2012